This case involves a suit for specific performance of a land sale contract. The plaintiff, Thomas C. Crews, owned a parcel of land in Montgomery. He listed the property for sale with Commercial Properties, a real estate agency owned by Don Bryant. In December 1984, Bryant entered into negotiations with Dan Elcan, a real estate agent working for Herman Maisel and Company, Inc. ("Maisel"), of Mobile, regarding the purchase of the land owned by Crews. The primary issue at trial was whether Elcan was acting as an agent for Maisel or for Rex Radio and Television ("Rex"), a prospective purchaser, when he negotiated the contract.
Maisel contended at trial that Elcan negotiated the purchase on behalf of Rex, and that both Bryant and Crews were aware that Elcan was acting for Rex. Crews contended that Elcan was acting as an agent only of Maisel and that the contract, therefore, bound Maisel to purchase the property. The trial judge found that Elcan was acting for Rex in the transaction. Testimony indicated that Rex was interested in buying only one-half of the property, and that Bryant and Elcan originally agreed to buy the other half. The testimony as to the final agreement is disputed, but it appears that Rex was to purchase the entire parcel and Bryant and Elcan were to try to sell the unwanted half. If the half Rex did not want was not sold within one year, Bryant and Elcan were to buy it from Rex. Crews argues that he was not informed of, and would not have approved, such an arrangement.
Both Bryant and Elcan testified that the transaction was to be closed no later than June 7, 1985, so that Rex could have its store constructed and in operation in time for the Christmas shopping season. As a condition of closing, a building permit must have been issued by the City of Montgomery. On June 6, 1985, Rex's attorney, Edward Kress, found out that the property had not yet been platted and that because of this, and the time required to complete the other procedures involved in acquiring the building permit (e.g., "setting" building plans on the plat; having the plat approved by the City), the closing could not take place on June 7. (A plat was introduced in *Page 981 
evidence that was approved on June 6, 1985.) Rex instructed Elcan to cancel the deal, and he did so by a registered letter dated June 7, 1985. After the deal was cancelled, Crews sued Maisel, seeking specific performance, claiming that his contract was with Maisel, not Rex. Maisel filed a third-party complaint against Rex. The trial judge, sitting without a jury, found in favor of the defendant Maisel, and the third-party complaint was dismissed as moot. That dismissal is not a part of this appeal.
Three issues are presented to this Court by Crews: whether the ore tenus presumption applies in this case; whether the trial court committed reversible error in its application and interpretation of the law as it applies to the facts of this case (specifically, in finding that Elcan was acting within the scope of his authority for Rex, and not for Maisel, and in not finding that Elcan was without written authority to act for Rex); and whether the trial judge acted arbitrarily in denying specific performance against Maisel.
 I.
First, Crews argues that the ore tenus presumption should not apply in this case because, he says, the trial judge "erroneously applied principles of law to the facts of the case." Specifically, Crews argues that the court incorrectly held 1) that Elcan was an agent of Rex and was acting within his real or apparent authority during the negotiations and 2) that the contract Elcan signed was, therefore, signed on behalf of Rex. We disagree.
Agency is a question of fact and, as such, is subject to theore tenus rule. Moseley v. Lathan, 448 So.2d 341 (Ala. 1984). The trial judge specifically found that Elcan was acting within his real or apparent authority for Rex. The ore tenus rule gives a presumption of correctness to the trial court's findings of fact, and a judgment based on those findings will not be disturbed unless they are palpably wrong, without supporting evidence, or manifestly unjust. In other words, if the trial court's judgment is supported by credible evidence, then it is due to be affirmed. Green v. Colley, 502 So.2d 754,755 (Ala. 1987).
 II.
Second, Crews argues that the trial judge erred by holding that Elcan was acting within the line and scope of his authority as an agent for Rex when he negotiated and entered into the contract for the sale of the land. The trial judge's order on this point is very specific, and we quote from it, at length:
 "The evidence produced at trial establishes that plaintiff seller hired a real estate agent, Don Bryant, to list his property marked as LOT 'A' on the plat submitted in evidence. Rex Radio had Dan Elcan, who is an employee of Maisel, acted as its real estate agent for the purchase of plaintiff's property. Dan Elcan and Don Bryant negotiated at length before a final contract was entered into on behalf of their principals. Initially, Rex Radio only wanted to purchase half of LOT 'A'. Ultimately, Rex Radio authorized the purchase of all of LOT 'A' with the second half of LOT 'A' to be purchased within one year. The final contract was signed by Dan Elcan as agent, by Don Bryant as agent, and by plaintiff seller.
 "This Court finds that Dan Elcan was acting within his real or apparent authority for Rex Radio on the basis of the following facts. Stuart Rose, president of Rex Radio, acknowledged that Rex Radio intended to purchase the property at issue. Mr. Rose came to Montgomery to inspect the property in question with Dan Elcan prior to the contract being finalized. Dan Elcan mailed a copy of the Offers to Buy and the final contract to Rex Radio. Rex Radio instructed Dan Elcan to terminate the contract on its behalf on June 6, 1985. Elcan then wrote to seller and to Don Bryant on June 7, 1985, and advised them that, as agent for Rex Radio, he was terminating the contract. Elcan also wrote to Edward Kress, attorney for Rex Radio, a letter confirming that, as agent for Rex Radio, he had terminated the contract *Page 982 
per Rex Radio's directions. Dan Elcan was acting as agent for Rex Radio on this transaction, as he has on approximately thirty other such transactions.
 "The liability of Maisel for specific performance on the contract hinges upon whether it disclosed to plaintiff the identity of its principal. As stated in Davis v. Childers, 381 So.2d 200 (Ala.Civ.App. 1979),
 " 'Generally when an agent, acting within his real or apparent authority, enters a contract on behalf of his principal, only the principal is bound and subject to suit on the contract. However, where the agent fails to disclose the fact that he acts for a principal or fails to disclose the identity of his principal, both the agent and the principal may be bound.'
"381 So.2d at 202.
 "Because Maisel was acting within its authority as agent for Rex Radio, the inquiry boils down to whether plaintiff seller had such notice of Rex Radio's existence and of its identity that it knew or should have known that Maisel was not a party to the contract. Hilburn v. Fletcher Oil Co., 495 So.2d 613 (Ala. 1986). Any such notice to Don Bryant, as the agent for the seller, serves as notice to the seller as well. Section 8-2-9, Code of Alabama 1975. The knowledge of an agent may be imputed to his principal as a matter of law, creating an incontestable presumption, if the agent's knowledge was acquired as an incident to the business transaction of the principal. Williams v. Fundaburk, 237 Ala. 30, 31, 185 So. 383, 384 (1938). See Caldwell v. Standard Oil Company, 220 Ala. 227, 228, 124 So. 514, 513 (1919 [1929]).
 "The evidence establishes that Dan Elcan notified Don Bryant that Elcan's principal for the purchase of the property was Rex Radio prior to the contract being finalized. Both Elcan and Bryant testified to this fact. Bryant produced a note of a telephone conversation he had with Elcan on February 3, 1985. The note read "Rex Radio 
TV, Fluted Block 20' Tall Glass Foyer, Dan Elcan, 2/3." Don Bryant testified as follows:
 " 'Q. (by Mr. Hobbs): At the time that the contract was finalized, did you know who was purchasing the property?
" 'A. (by Mr. Bryant): Yes.
" 'Q. Who was that?
" 'A. Rex Radio and T.V.
 " 'Q. When did you first become aware of the identity of the purchaser?
 " 'A. According to my notes it was February 3. It was a Sunday night when Dan Elcan talked to me at home.
 " 'Q. Did you make any notes of this conversation?
" 'A. Yes, I did.
 " 'Q. Let me show you what has been marked as Defendant's Exhibit Three. Can you identify that for the Court?
 " 'A. Yes. This is a copy of a contract and at the bottom of it is my notes that on February 3 I talked to Dan Elcan and he told me that it was Rex Radio and T.V. who was his client and they were going to build a fluted block twenty foot tall building with a glass foyer. I wrote down here 2/3. That's February 3. That was on Sunday night when he discussed it with me and told me what kind of building it was going to be.
 " 'Q. The notes that you have there, those are your handwritten notes?
" 'A. Yes.
 " 'Q. Were they made at the time of your conversation with Dan Elcan on February 3?
" 'A. Yes, they were.
 " 'Mr. HOBBS: Your Honor, we offer Defendant's Exhibit Three into evidence.
" 'THE COURT: All right.
 " 'Q. Did Dan Elcan inform you at least by February 3, 1985, that the purchaser for whom he was acting as agent was Rex Radio and Television?
 " 'A. He told — Yes. He told me — I asked him who was going to be building on the property. He said Rex Radio and T.V. *Page 983 
 " 'Q. Did he tell you Rex Radio and Television would be purchasing the property?
 " 'A. He told me he was representing them, so I took it they were purchasing the property.
 " 'Q. At the time that the contract — excuse me — did you ever communicate to Tom Crews that Rex Radio and Television would be purchasing the property?
 " 'A. At some period in time — I don't know when exactly — I did tell Mr. Crews because he was concerned about what kind of building it was going to be. I told him — I think it's when we had the conversation with Dan Elcan. I must have talked to Crews on Friday.
" '. . . .
 " 'Q. Well, at the time this contract was executed on page 3, — I'll tell you it has a March 14, 1985, date. My question is, at the time this contract marked Plaintiff's Exhibit 3, at the time it was executed by the parties, had you communicated that to Mr. Crews?
 " 'A. Before February 26 I know I told Mr. Crews that it was Rex Radio and T.V. Before February 26.
" '. . . .
 " 'Q. (by Mr. Alton): Did you believe that Rex Radio and T.V. was going to buy the whole LOT 'A'?
" 'A. (By Mr. Bryant): Yes, I did.'
 "Don Bryant understood that Rex Radio would be purchasing approximately half of LOT 'A' at the closing and was committed to purchasing the remaining half one year from the closing. Prior to the contract being agreed upon, the seller's own agent had knowledge of Elcan's agency relationship with Rex Radio and Rex Radio's identity. Because a sufficient and timely disclosure was made by Elcan to the seller's agent, and because such a disclosure serves as notice to the seller himself, Maisel is not liable . . . on the contract."
The trial judge's order is clear and specific and his findings are supported by the record. Although the evidence is in dispute, the decision of the trial judge is not palpably wrong, without supporting evidence, or manifestly unjust. On this ground the judgment is due to be affirmed.
Crews also argues that Elcan was not the agent of Rex, based on the fact that there was no written authorization for him to act on Rex's behalf. We do not believe mere proof that Elcan had no written authority to act for Rex would necessarily establish a contract between Crews and Maisel. However, we do not decide this issue. This Court will not consider issues raised for the first time on appeal. Green v. Taylor,437 So.2d 1259 (Ala. 1983). Our independent review of this record does not reveal a single instance where this issue was presented to the trial judge for his consideration. "The trial court may not be put in error for failure to rule on a matter which was not presented to it or decided by it." City of Rainbow City v.Ramsey, 417 So.2d 172, 174 (Ala. 1982). We, therefore, do not consider this argument.
 III.
Crews argues that the trial judge acted arbitrarily in denying specific performance against Maisel. However, we need not address that argument, since we affirm on the finding that there was no contract between Crews and Maisel.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ALMON, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., concurs in the result. *Page 984