This appeal arises out of an action to quiet title. Troy Grayson, the appellant, and Horace B. Hanson III and others, the appellees (hereinafter referred to collectively as "the Hansons"), agreed to settle the action during a bench trial. The trial court recessed the proceedings and later entered a judgment purporting to reflect the terms of the parties' agreement. Grayson appeals from that judgment. We reverse and remand.
 I. Facts and Procedural History
The property in dispute is located in the "southeast corner of the southeast quarter section 12, township 24 north, range 3 west in Pickens County," near the bank of the Tombigbee River. Grayson and the Hansons dispute the facts regarding ownership of the subject property. Grayson alleges that, on December 1, 1949, his father, T.L. Grayson, purchased a parcel of property, which included the property in question. Grayson alleges that his father used the property as additional land for his farming operation. According to Grayson, on October 27, 1955, his father sold a portion of the property, approximately 48.63 acres, to F.C. Huyck Sons, a New York corporation.
After the sale, Grayson alleges, his family constructed a fence to separate the property sold to F.C. Huyck Sons from the property his family retained. According to Grayson, his father used the property within the perimeter of the fence as additional farmland until his death in 1981. Grayson alleges that, on January 9, 1982, the property formerly owned by his father was conveyed to him. Grayson alleges that, since 1949, he and his family have exercised open, notorious, hostile, continuous, peaceable, and exclusive possession of the disputed property.
The Hansons allege that the disputed property was a part of the old "Hanson Homeplace." According to the Hansons, on February 15, 1922, the Hanson Homeplace was mortgaged to the Federal Land Bank of New Orleans. On July 23, 1934, the Land Bank foreclosed on the Hanson Homeplace. The Hansons allege that, although the bank foreclosed on the property, the Hanson Homeplace was later reconveyed to the Hanson family. The Hansons allege that they have paid property taxes on the disputed property for the past 23 years.
On May 18, 1998, Grayson brought an action to quiet title to the disputed property, alleging that he and his predecessors in title had been in "actual, clear, definite, notorious, continuous, adverse, peaceable and exclusive possession" of the disputed property for a period exceeding 20 years and had thereby acquired the property by adverse possession. On August 19, 1998, Grayson filed a motion for a summary judgment. On September 23, 1998, the Hansons filed a motion in opposition to Grayson's summary-judgment motion. On October 13, 1998, the trial court denied Grayson's motion for a summary judgment. On July 12, 1999, Grayson amended the complaint in his action to quiet title, altering the description of the property in dispute. Grayson did not refile a motion for a summary judgment. On June 26, 2001, a bench trial of the case began. After approximately four hours of testimony, the parties advised the court that they had reached an agreement. The Hansons' attorney read the agreement into the record.
The agreement provided that Grayson would quitclaim to the Hansons "tract number three as described in the Tax Assessor's records," which consisted of the west half of the disputed property, and that the Hansons would quitclaim to Grayson "the property described on Exhibit Number 11," which consisted of the east half of the disputed property. In addition, *Page 148 
the agreement provided that Grayson would grant the Hansons a 20-foot-wide-easement, which was to be located on the south side of Grayson's property line. The Hansons and Grayson told the trial court that after they agreed upon the "flagging" of the property by a surveyor, indicating the location of the easement and the boundary lines of their respective parcels of the disputed property, they would finalize the agreement and the trial court could then enter an order based upon that agreement.
The Hansons' surveyor set out the initial flags marking the proposed location of the easement, and based on those flags the Hansons' attorney prepared three proposed consent judgments, each incorporating a slightly different agreement, for approval by Grayson's attorney. Grayson's attorney, however, objected to each of the proposals, alleging after reviewing the second draft that the Hansons had added an additional .32 acres to the property Grayson had agreed to quitclaim to the Hansons, that the proposed easement did not follow the existing fence line, as the parties had allegedly agreed, and that the Hansons had added an additional 108 foot by 20 foot section of Grayson's property to the easement. Because the parties could not agree on the addition of the .32 acres and the location of the easement, Grayson filed a motion to set aside the agreement, alleging that both parties had agreed at trial that there would be no agreement until both parties agreed on the surveyor's flagging and that both parties had not agreed on the flagging.
The trial court entered a final judgment, incorporating into that judgment the Hansons' third proposed agreement. The judgment provided that the east corner of the disputed property, which consisted of two parcels, one containing .32 acres and one containing 1.9 acres, was to be Grayson's property. The judgment provided that the west corner of the disputed property, which consisted of 1.58 acres, was to be the Hansons' property. Finally, the judgment provided that the Hansons be awarded a 20-foot-wide easement, to be located where the Hansons' surveyor had proposed. Grayson appeals from the trial court's judgment, arguing that the trial court erred when it denied his motion for a summary judgment and when it incorporated the Hansons' proposed agreement into its final judgment.
 II. Summary Judgment
Grayson contends that the trial court erred when it denied his motion for a summary judgment because, Grayson argues, he presented substantial evidence indicating that he and his predecessors in title had exercised "open, notorious, hostile, continuous, peaceable and exclusive possession" of the disputed property for over 20 years. Grayson filed his motion for a summary judgment and a brief in support of that motion on August 19, 1998. Grayson attached to the motion his own affidavit and the affidavits of two other persons. Each of the affiants, including Grayson, stated that he was familiar with the property in question and that the property in question had been under the exclusive use and control of the Grayson family for over 20 years. According to Grayson, the affidavits in support of his motion for a summary judgment prove that there was no genuine issue as to any material fact and that Grayson was entitled to a judgment as a matter of law.
However, we cannot review the trial court's denial of Grayson's motion for a summary judgment because Grayson amended his complaint, changing the description of the property in dispute, after the trial court had denied his motion for a summary judgment. Grayson filed his initial complaint on May 18, 1998. Grayson *Page 149 
moved for a summary judgment on August 19, 1998. The trial court denied Grayson's motion for a summary judgment on October 13, 1998. Grayson then amended his complaint, altering the description of the property in dispute, on July 12, 1999.
The amended complaint in this action changed the description of the property; thus, it superseded the original complaint, so that the original complaint is treated as though it had never been filed. See Holcomb v.Morris, 457 So.2d 973, 977 (Ala.Civ.App. 1984). From the record before us, it appears that Grayson never renewed his motion for a summary judgment after he amended his original complaint. Thus, the trial court never had an opportunity to rule upon a summary-judgment motion, based upon the amended complaint, which changed the property description. This Court will not consider an issue raised for the first time on appeal.Crews v. Herman Maisel Co., 524 So.2d 980, 983 (Ala. 1988). "`The trial court may not be put in error for failure to rule on a matter which was not presented to it or decided by it.'" Crews, 524 So.2d at 983, quoting City of Rainbow City v. Ramsey, 417 So.2d 172, 174 (Ala. 1982). Because the initial complaint was, in effect, withdrawn by the amended complaint and the trial court was not asked to rule on the amended complaint, Grayson's contention that he was entitled to a summary judgment as a matter of law is not before us.
We note, out of an abundance of caution, the rule stating that when the trial court's denial of a motion for a summary judgment is followed by a trial and a judgment on the merits, we review for error only the denial of a motion for a judgment as a matter of law. See City of Birmingham v.Sutherland, [Ms. 1001327, March 29, 2002] 834 So.2d 755 (Ala. 2002), citing Superskate, Inc. v. Nolen, 641 So.2d 231, 233 (Ala. 1994) ("Ordinarily, any issue as to the denial of [a] summary judgment motion would be moot, because the sufficiency of the evidence at trial would be the significant question on appeal."). We add this caveat because, in this case, the parties' attempted settlement resulted in a record that does not contain all of the evidence. Rather than reach the issue whether the circumstances here presented are sufficiently similar to those inSutherland to warrant application of the foregoing rule, we have decided this case based on the procedural ground of failure to renew the motion for a summary judgment after amendment of the original complaint. Our resolution of this case based on this procedural issue should not be read as legitimating a review of the alleged erroneous denial of a motion for a summary judgment after a trial on the merits.
 III. Judgment Based on the "Settlement Agreement"
Grayson next contends that the trial court erred in incorporating into its judgment the Hansons' proposed "settlement agreement." Grayson contends that the parties agreed, on the record, that the "settlement agreement" settlement would not be finalized until both parties agreed upon the flagging of the easement and the boundary lines of the parties' respective properties. In effect, Grayson contends that the "agreement" was not a final agreement but was rather an agreement to agree further, on another issue, at a later date. The record indicates that the parties initially agreed that Grayson would quitclaim to the Hansons "tract number three as described in the Tax Assessor's records," which consisted of the east half of the disputed property, and that the Hansons would quitclaim to Grayson "the property described on Exhibit Number 11," which consisted of the west half of the disputed property. In addition, the parties agreed that Grayson would grant the Hansons a 20-foot-wide easement, which *Page 150 
was to be located on the south side of Grayson's property line. When the trial court asked the parties who would decide where the easement was to be located, the Hansons' attorney stated that the surveyor would flag the location. The Hansons' attorney then stated: "And before I submit it to [the Court] for signature, I'll make sure that [Grayson's attorney] and Grayson have looked at it."
In response to the statement by the Hansons' attorney that the surveyor would perform the flagging, Grayson stated that his understanding was that the easement would be located along the existing fence line of his property. The Hansons' attorney then stated:
 "Let's do it this way, we're going to go out there and flag what we intend to use. We've got an agreement, and when we all agree on the flagging, we will finalize the agreement. I don't know how to do it any other way. It's going to have to be marked on the ground for us to see."
(Emphasis added.) The Hansons' attorney then stated that once the flagging was completed he would prepare a proposed settlement agreement and send it to Grayson's attorney for approval.
The Hansons' surveyor flagged the proposed location of the easement and the boundary lines of the property. When Grayson viewed the proposal, he objected to the location of the easement and to the addition of .32 acres to the property he was agreeing to quitclaim to the Hansons. Grayson alleges that the trial court should not have entered an order based upon the Hansons' proposed settlement agreement because, he says, he never agreed with the surveyor's flagging. Grayson alleges that the parties never entered into a final settlement agreement; rather, he says, they agreed to agree on a settlement agreement only after the surveyor had flagged the property. Grayson contends that he cannot be bound by an agreement to agree.
At the outset, we note that the ore tenus rule is not applicable in this case. Although the trial court heard four hours of testimony from witnesses in the case, the trial ended when the parties stated that they had reached a settlement agreement. At that point, the trial concluded before all of the evidence was presented. Consequently, the trial court's assessment of the credibility of the witnesses cannot support its determination.
The record contains a discussion between the Hansons' attorney, Grayson, and Grayson's attorney, regarding the terms of the settlement agreement at the time the settlement was announced in the courtroom. The trial court based its settlement order on this discussion and on the Hansons' proposed agreement. While attorneys are officers of the court and their statements require no oath, no one challenges the credibility of the statements made during the discussion of the settlement. Further, no one challenges the accuracy or completeness of the transcript.
A validly executed settlement agreement is as binding on the parties as any other contract. Sheridan v. Board of Water Sewer Comm'rs ofCity of Prichard, 764 So.2d 526, 529 (Ala. 2000). However, settlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement, seeIngram v. Pollock, 557 So.2d 1199, 1200 (Ala. 1989), and Ex parteIndustrial Technologies, Inc., 707 So.2d 234, 238 (Ala. 1997), or when the parties have merely agreed to later agree, see Muscle ShoalsAviation, Inc. v. Muscle Shoals Airport Authority, 508 So.2d 225, 227
(Ala. 1987); Dixieland Food Stores, Inc. v. Geddert, 505 So.2d 371, 373
(Ala. 1987); Clanton v. *Page 151 Bains Oil Co., 417 So.2d 149, 151 (Ala. 1982).
The trial court made no finding of ambiguity and heard no further testimony in the case concerning the import of the settlement. Thus, the trial court could have relied only upon the transcript of the parties' discussion of a settlement agreement and the Hansons' proposed settlement agreement when it incorporated that proposed agreement into its final judgment.
The transcript of the parties' discussion of the proposed settlement agreement unambiguously reflects that the agreement was not final until both Grayson and the Hansons agreed on the location of the easement and the boundary lines of their respective properties as established by the surveyor's flagging. Based upon the plain import of the terms of the agreement as set forth in the transcript, each party had to agree upon the flagging before it became bound by the settlement agreement. The transcript does not indicate that Grayson agreed to be bound by the surveyor's decision as to the flagging of the easement. The surveyor was in an advisory role, at best.
Grayson repeatedly objected to the surveyor's flagging and to the Hansons' proposed settlement agreement, which was based upon that flagging. The trial court erred when it failed to grant Grayson's motion to set aside the agreement and entered the judgment incorporating the agreement submitted by the Hansons.
 Conclusion
We do not reach the trial court's order denying Grayson's motion for a summary judgment as to the original complaint. The trial court's judgment in favor of the Hansons is due to be reversed and this cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, Johnstone, and Woodall, JJ., concur.