BOLIN, Justice.
John Puccio petitions this Court for a writ of mandamus ordering the trial court to grant his Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss him as a defendant in an action brought by Richard Grant and Abi-gayle Grant on the basis that the trial court lacks personal jurisdiction over him.
On October 22, 2003, the Grants sued Cambridge Credit Counseling Corporation, Puccio, Jessica Spence, and several fictitiously named parties in the Montgomery Circuit Court, seeking damages and injunctive relief arising out of the Grants’ participation in a debt-management program offered by Cambridge Credit for the payment of credit-card debt.[1] On June 1, 2004, the Grants filed a motion for leave to amend their complaint.[2] On June 2, 2004, Puccio moved to dismiss the complaint on the ground that as to him the trial court lacked personal jurisdiction. Puccio attached to his motion to dismiss an affidavit, stating that he had no bank accounts or other financial interests in Alabama and that he had never personally spoken to the Grants. He also stated that he had executed the service agreement between the Grants and Cambridge Credit in the course and scope of his duties as president of Cambridge Credit. On June 8, 2004, the trial court granted the Grants’ motion to amend. In their amended complaint, the Grants asserted Cambridge Credit was an alter ego of Puccio. On June 25, 2004, Puccio filed a motion entitled “Supplement to Motion to Dismiss,” again addressing whether Puccio had minimum contacts with Alabama so as to subject him to jurisdiction here and addressing the alter-ego argument raised in the Grants’ amended complaint. On July 6, 2004, Puccio filed a “Notice of Filing Corrected Exhibit 1 to Motion to Dismiss.” To that filing Puccio attached a certified copy of a motion to dismiss with attachments, which he had filed in the United States District Court when the action had been removed to the federal court. One of the attachments is a signed affidavit by Puccio, which contains substantially the same factual averments as the affidavit he filed on June 2, 2004. However, the affidavit attached to the July 6, 2004, filing was not a sworn affidavit.[3] At a hearing on July 7, 2004, the parties addressed the minimum-contacts argument and the alter-ego argument. The trial court denied the motion to dismiss on August 19, 2004. Puccio timely filed his petition on September 27, 2004.
*1072 Á petition for a writ of mandamus is the appropriate remedy by which to challenge an interlocutory order on the issue of personal jurisdiction, and a writ will issue only upon a showing of “(a) a clear legal right in the petitioner to the order sought, (b) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court.” Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001).
“In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and ‘where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.’ Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)). ‘For purposes of this appeal [on the issue of in personam jurisdiction] the facts as alleged by the ... plaintiff will be considered in a light most favorable to him [or her].’ Duke v. Young, 496 So.2d 37, 38 (Ala.1986).”
Ex parte McInnis, 820 So.2d at 798.
In Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 230 (Ala.2004), this Court stated:
“[I]f the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002)(citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995)(‘When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.’) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).”
In his motion to dismiss filed on June 2, 2004, Puccio argued that, as a corporate officer of Cambridge Credit, he lacked sufficient minimum contacts with Alabama to satisfy the requirements of personal jurisdiction. However, Puccio’s motion to dismiss the original complaint is moot because the Grants subsequently amended their complaint. An amended complaint supersedes the previously filed complaint and becomes the operative pleading, unless it subsequently is modified. Grayson v. Hanson, 843 So.2d 146 (Ala.2002). Puccio’s June 2, 2004, motion to dismiss is addressed solely to the original complaint, and the original complaint has been superseded. See Holley v. St. Paul Fire & Marine Ins. Co., 396 So.2d 75 (Ala.1981)(noting that once an amended pleading is interposed, the original pleading no longer performs any function and any subsequent motion by an opposing party should be directed to the amended pleading); see also Kentucky Press Ass’n, Inc. v. Kentucky, 355 F.Supp.2d 853 (E.D.Ky.2005)(plaintiffs amended complaint superseded the original complaint, making moot the motion to dismiss the original case); In re Colonial Ltd. P’ship *1073 Litig., 854 F.Supp. 64, 80 (D.Conn.1994)(‘Tt frequently happens in the district court that a plaintiff amends its complaint while a motion to dismiss is pending. A court then ... may ... deny[] the motion as moot....”). Accordingly, Puccio’s June 2, 2004, motion to dismiss is moot. That result, however, did not prevent Puccio from filing a motion to dismiss the amended complaint on June 25, 2004, in response to the amended complaint.[4] In his second motion to dismiss based on lack of personal jurisdiction, he discusses the minimum-contacts and alter-ego arguments. We note that Puccio filed an affidavit in support of his first motion to dismiss disputing that he had had the necessary minimum contacts with Alabama to form a basis for personal jurisdiction over him. We also recognize that after he filed his second motion to dismiss, Puccio, on July 6, 2004, filed a certified copy of an unsworn affidavit. Even if the court could have considered that affidavit, the substance of that affidavit does not address the allegations that Cambridge Credit was the alter ego of Puccio.
Due-process concerns are satisfied when a nonresident defendant has “certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Alabama’s long-arm rule, Rule 4.2, Ala. R. Civ. P., “extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions.” Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002). A party’s contacts with the forum state can be either general or specific.
“ ‘General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts with the forum state that are unrelated to the cause of action and that are both “continuous and systematic.” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)[citations omitted]. Specific contacts, which give rise to specific juris-' diction, consist of the defendant’s contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.’ ”
Elliott, 830 So.2d at 730.
In Thames v. Gunter-Dunn, Inc., 373 So.2d 640 (Ala.1979), this Court held that officers of an out-of-state bank, who had never been in Alabama and who had conducted no personal business either through the use of the corporation as an alter ego or through personal agents in this state, were not subject to the jurisdiction of Alabama courts. With regard to the alter-ego theory, the Court stated:
“In this case there was no allegation that the corporate entity was a sham or a facade intended only to protect the individual appellees. Nor was there a showing that the appellees engaged in any business for personal gain or profit *1074 or any transaction which was outside the scope of their employment with the bank. Thus the corporation could not be said to have acted as an agent of the individual appellees so as to become their alter egos and to warrant personal jurisdiction over them.”
373 So.2d at 642.
Ex parte Sekeres, 646 So.2d 640 (Ala.1994), involved a wrongful-death action brought against Physicians Weight Loss Centers of America, Inc., and Charles Sek-eres, its president, chief executive officer, and sole shareholder. Sekeres had been to Alabama two or three times to visit a franchisee for Physicians Weight Loss Centers, and Sekeres sought a writ of mandamus ordering the trial court to dismiss him from the wrongful-death action on the basis that the trial court lacked personal jurisdiction over him. Sekeres argued that he had developed and marketed the diet program as an officer of the corporation and that there was insufficient evidence for the court to impose liability on him individually. The plaintiff argued that there had been insufficient discovery for her to determine whether the corporation was a sham and “so controlled [by Sekeres] as to be merely an instrumentality of Sekeres.” 646 So.2d at 642. The plaintiff argued that Sekeres had sufficient contacts with Alabama; her complaint clearly alleged that the defendants had fraudulently misrepresented the degree of physician participation in the weight-loss program and that the decedent had participated in the program'in reliance on that misrepresentation. This Court held that Sekeres had not shown a clear right to be dismissed from the action for lack of personal jurisdiction.
In their amended complaint, the Grants state that Puccio established Cambridge Credit as a 26 U.S.C. § 501(c)(3) nonprofit entity.[5] They allege that through national radio advertising Cambridge Credit aggressively marketed itself as a nonprofit entity dedicated to assisting consumers who are experiencing financial difficulties. Despite Cambridge Credit’s claim that it is a nonprofit entity, the Grants contend that it is designed to generate profit for Puccio individually and that Cambridge Credit is inappropriately affiliated with a for-profit corporation owned by Puccio’s brother. The Grants contend that they enrolled in the debt-management program offered by Cambridge Credit after its employee Jessica Spence warned the Grants that if they kept their scheduled appointment with Consumer Credit Counseling Service of Alabama, their financial situation would further deteriorate because credit-card companies would be notified that the Grants were having financial difficulties. The Grants entered into a service agreement with Cambridge Credit, and Puccio signed the agreement on behalf of Cambridge Credit. The Grants paid an enrollment fee of $605. The Grants allege that the statements by Cambridge Credit and its officers and employees that enrollment in the debt-management program would provide savings to the Grants were false, misleading, and inaccurate. With regard to their claim that Cambridge Credit was *1075 an alter ego for Puccio, the Grants’ amended complaint provides, in pertinent part:
“27. Cambridge Credit Counseling Corp. promotes itself as America’s premier Not-For-Profit Debt Management organization.
“28. Yet, in order to keep and grow its large fees from consumers such as the Grants, Cambridge Credit, its officers, agents, and employees have entered into a pattern and practice of fraudulent conduct, which included the fraud practiced upon the Grants, resulting in increasingly aggressive self-serving deals for Cambridge Credit Counseling Corp.
“29. The Grants discovered the fraudulent conduct within a year of filing this lawsuit.
“30. On information and belief, the Grants allege that Cambridge Credit, John Puccio, and other affiliated entities are part of a single commercial enterprise linked by common ownership of, and active and pervasive control by, John Puccio, and characterized by a confused intermingling of activity in the defendants’ common enterprise with other affiliated entities.
“31. Cambridge Credit’s Form 990[6] for 2001 reports salaries of $624,000.00 for President John Puccio and the same amount for his brother Richard Puccio as Strategic Planner.
“32. Defendant John Puccio as the President of Cambridge Credit participated in defrauding customers by scheming and orchestrating a plan and pattern of training employees to behave with deceptive trade practices.
“33. Defendant John Puccio as the President of Cambridge Credit participated in the breach of fiduciary duty as evidenced by his signing of the service agreement.
“34. By virtue of being the alter ego of Cambridge Credit, John Puccio is enabled to intertwine the operations of various entities for the purpose of defrauding plaintiffs and others similarly situated, as set forth in this complaint.
“35. John Puccio, as the alter ego of the corporation is, and has been, conducting, managing, and controlling the affairs of the corporation, as though it were his own for-profit business.
“36. On information and belief, profits made by Cambridge Credit are siphoned away by John Puccio, his family relatives, and other affiliated for-profit entities through compensation, employee benefit packages, and/or other means.
“37. On information and belief, Cambridge Credit Counseling Corporation is the alter ego of John Puccio and organized and operated as part of a common enterprise with other affiliated entities.
“38. On information and belief, the ultimate mission of the common enterprise is to assert the non-profit and tax-exempt status of Cambridge Credit to allow for unregulated and unscrupulous business practices.
“39. On information and belief, avoidance of federal regulation has allowed enormous business asset growth for Cambridge Credit; John Puccio, the ultimate intended beneficiary of that growth, has directly or indirectly profited by the siphoning of Cambridge Credit’s assets achieved through the organization’s non-profit status.”
Puccio correctly argues that, as a corporate officer of Cambridge Credit, *1076 he lacks sufficient minimum contacts with Alabama to satisfy the requirements of personal jurisdiction. Personal jurisdiction over an individual corporate officer or employee “may not be predicated upon jurisdiction over the corporation itself.” Thames, supra, 373 So.2d at 641. However, the Grants argue that Puccio used Cambridge Credit as his alter ego.' If a corporation is the alter ego of an individual, then the court may disregard the corporate form and exercise personal jurisdiction over the individual. “[Ajttribution of contacts to the individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual.” Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1021 (10th Cir. 1990).
It is undisputed that Cambridge Credit is subject to personal jurisdiction in Alabama. Cambridge Credit has made appearances in court without objection.[7] An objection based on lack of personal jurisdiction is waived if it is not timely asserted. Rule 12(h)(1), Ala. R. Civ. P.; see also Pardazi v. Cullman Med. Ctr., 896 F.2d 1313 (11th Cir.1990)(party’s failure to timely raise defense of lack of personal jurisdiction was deemed to have conferred personal jurisdiction on the court by consent). Furthermore, we note that Cambridge Credit has transacted business in Alabama by agreeing to provide services to the Grants and, therefore, that it has had minimum contacts with the State. Rule 4.2(a)(2)(A), Ala. R. Civ. P.; see also Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888 (Ala.2002)(nonresident corporation’s contacts with the State were sufficient to support specific personal jurisdiction in a contract action by the plaintiff in the tree-removal business where the plaintiff sought to enforce a contract to obtain title to a specialized truck corporation had sold to the plaintiff).
We note that Puccio’s second motion to dismiss does not specifically address the factual allegations raised in the Grants’ amended complaint that Cambridge Credit is Puccio’s alter ego, i.e., that Puccio established Cambridge Credit as a 501(c)(3) entity to use the tax-exempt status and exemption from certain federal regulations to operate Cambridge Credit as his own for-profit business. Rather, Puccio simply argued that he was not an Alabama resident and that he had insufficient contacts with Alabama to subject him to jurisdiction of its courts and “the addition of the alter ego allegation ... still does not vest this Court with personal jurisdiction.” In construing the allegations in the Grants’ complaint not controverted by Puccio as true, as we are required to do for the purposes of Puccio’s motion to dismiss, Ex parte Covington Pike Dodge, supra, we cannot say that the trial court erred in denying the motion.
Puccio contends that the Grants failed to allege that Cambridge Credit was a sham or a facade corporation in order to support their alter-ego theory. Although the Grants do not specifically use the words “sham” or “facade,” it is abundantly clear from their amended complaint that they are alleging that Puccio used the corporate status of Cambridge Credit as his alter ego to avoid personal liability and to gain personal profits. “ ‘Although the limitation of personal liability is a valid corporate attribute, the corporate entity will be disregarded when it is used solely to avoid personal liability of the owner while re *1077 serving to the owner the benefits gained through the use of the corporate name.’ ” Culp v. Economy Mobile Homes, Inc., 895 So.2d 857, 860 (Ala.2004) (quoting Messick v. Moring, 514 So.2d 892, 894 (Ala.1987)).
At the hearing on the motion to dismiss, the trial court indicated that dismissal would be premature because the Grants had not had ample opportunity to fully investigate their claims. Puccio argues that the trial court’s characterization of a Rule 12(b)(2), Ala. R. Civ. P., motion as premature eviscerates the intent of Rule 12(b), which, he says, requires a motion to dismiss for lack of personal jurisdiction to be filed at this stage of the proceedings.[8] He argues that requiring a defendant to raise the threshold defense of lack of personal jurisdiction early in the proceedings ensures that the trial court has personal jurisdiction over the defendant before it addresses the merits of the case. However, even though a defendant timely files a motion to dismiss, a plaintiff may be entitled to discovery solely on the issue of personal jurisdiction raised in the motion to dismiss. See generally Ex parte Covington Pike Dodge, Inc., supra; Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala.2003). Thus, we cannot say that the trial court erred in concluding that it would be premature to grant the motion to dismiss at this stage in the proceedings.
Puccio has not shown that he has a clear and undisputable right to a dismissal of the Grants’ claims against him for lack of personal jurisdiction. Therefore, the petition for the writ of mandamus is denied. However, we note:
“A denial of a Rule 12(b)(2)[, Ala. R.Civ.P.,] motion to dismiss for lack of personal jurisdiction is interlocutory and preliminary only. After such a denial, the continuation of personal jurisdiction over a defendant who appropriately persists in challenging it in the defendant’s answer to the complaint and by motion for summary judgment or at trial depends on the introduction of substantial evidence to prove the plaintiffs jurisdictional allegations in the plaintiffs complaint.”
Ex parte McInnis, supra, 820 So.2d at 798.
PETITION DENIED.
NABERS, C.J., and SEE, LYONS, HARWOOD, STUART, SMITH, and PARKER, JJ., concur.
WOODALL, J., concurs in the result.

. The defendants removed the action to the federal court, which subsequently remanded it to the state court.

. Rule 15(a), Ala. R. Civ. P., provides: "Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires.” From the material submitted with the petition for the writ of mandamus, it does not appear that leave of court was necessary for the Grants to amend their complaint.

."An affidavit sufficient to satisfy Rule 56(e)[, Ala.R.Civ.P.,] is a written declaration or statement of facts, made voluntarily and based on personal knowledge, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer an oath or affirmation.” Couch v. City of Sheffield, 708 So.2d 144, 152-53 (Ala.1998). Puccio's affidavit does not contain' the date, name, or signature of a notary public, affirming that Puccio was swearing to the truth of the factual averments in the affidavit.

. Although Puccio referred to his second motion to dismiss as a "supplement” to his first motion to dismiss, the first motion to dismiss is moot. Consequently, we will consider this "supplement” as a second motion to dismiss. The essence of the motion will determine how it is to be considered under the Alabama Rules of Civil Procedure. Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281 (Ala.1996).

. Section 501(c)(3) of the United States Tax Code pertains to "[corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes....” Section 501(c)(3) entities are exempt from paying federal income tax. Also, entities established under 501(c)(3) are exempt from the requirements of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq., and the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

6. Form 990 is a self-reporting mechanism by which a 501(c)(3) entity provides information concerning its current activities and financial picture. Completed forms 990 are public documents.

. A transcript from the July 7, 2004, hearing on the motion to dismiss shows that counsel for Cambridge Credit stated that Cambridge Credit was properly before the court. Also, Cambridge Credit has complied with certain discovery on the merits of the case without objecting on the basis of lack of personal jurisdiction.

. At the option of the pleader, a defense of lack of personal jurisdiction may be asserted either by responsive pleading or by a motion to dismiss. Ex parte Fidelity Bank, 893 So.2d 1116 (Ala.2004).