PITTMAN, Judge.
 

 This appeal, transferred to this court by the Alabama Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6), concerns a putative settlement of a claim for uninsured-motorist (“UM”) insurance benefits asserted by Amy Leigh Sudduth against Saga-more Insurance Company in an action filed by Sudduth in the Chambers Circuit Court.
 

 Sudduth’s original complaint, filed in April 2008, asserted claims against two named defendants: Shirley Ann Phillips, who was the owner of a motor vehicle that allegedly had collided with an automobile that Sudduth was operating on or about January 1, 2008; and an insurance company affiliated with the American International Group, Inc. (“AIG”),
 
 [1]
 
 that had allegedly afforded Sudduth UM insurance coverage under a policy naming her as an insured. Of those defendants, only the AIG affiliate was served with process. In August 2008, Sudduth amended her complaint to add claims against Sagamore seeking an award of UM benefits based upon the theory that Sagamore had issued automobile-insurance policies to two persons with whom Sudduth had been living at the time of Sudduth’s automobile’s collision between Sudduth’s automobile and Phillips’s motor vehicle and that UM benefits under those policies extended to Sudduth based upon her status as a resident of the named insureds’ household. Sagamore answered the amended complaint in September 2008, admitting that its coverage extended to Sudduth, as a member of the insureds’ household, but denying that any benefits were payable under the policies.
 

 On October 3, 2008, Sudduth filed a motion to enforce what she claimed was a settlement of her claims against Sagamore. Attached to the motion were copies of letters sent and received by counsel for Sagamore and Sudduth that pertained to the putative settlement agreement. Because the outcome of this appeal turns upon the content of those letters, we will quote from them at length.
 

 Sagamore’s attorney’s letter to counsel for Sudduth, dated September 15, 2008, stated, in pertinent part:
 

 
 *1288
 
 “My firm has been retained by Saga-more Insurance Company to represent them in a lawsuit file[d] in the Circuit Court of Chambers County. It is my understanding that Sagamore was recently added in an Amended Complaint.
 

 “Since Sagamore has some what limited information regarding the Plaintiffs damages in this matter, they have decided to exercise their rights as outlined in
 
 Lambert v. State Farm [Mutual Automobile Insurance Co.],
 
 576 So.2d 160 (Ala.1991). It is my understanding the tortfeasor’s liability limits are $25,000.00. It is Sagamore’s intention to advance these settlement proceeds and preserve its subrogation rights against the tortfeasor in this matter.
 

 “I have requested a check from Saga-more in the amount of $25,000.00. If this is not the correct amount of the liability limits, please advise and I will adjust the same. Once I receive the check I will immediately forward it to your office payable to you and the Plaintiff.”
 

 On September 23, 2008, Sudduth’s attorney replied:
 

 “I have reread your letter dated September 15, 2008, addressed to me offering the $25,000.00. I have conferred with my client and she has agreed to accept same in exchange for a full and final release.
 

 “I look forward to receiving your check and the release.”
 

 On September 25, 2008, Sagamore’s attorney responded:
 

 “In response to your letter of September 23, 2008, you need to read my letter dated September 15, 2008 again. There was no ‘offer’ in exchange for any ‘Release.’
 

 “It would appear from the information I have reviewed that Sagamore’s rights to preserve subrogation against the tort-feasor were extinguished when the Plaintiff executed a Release after the settlement with the tortfeasor.
 

 “As you know, the steps for settlement with an underinsured motorist carrier are outlined in
 
 Lambert
 
 .... In the ‘second step’ of this procedure, it states in pertinent part ‘... if the settlement would release the tortfeasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist carrier of the proposed settlement and the terms of any proposed release.’ It is my understanding the first notice Sagamore received that there was a ‘settlement’ was a letter dated June 26, 2008 to TriCounty Insurance Agency in Lanett. Assuming this letter would constitute notice, the letter states the case against the tortfeasor has been settled and the Plaintiff was presently negotiating with the first in line underinsured motorist carrier. This is in contrast to the provisions as outlined in
 
 Lambert.
 

 “A case that is analogous to the instant case,
 
 Allstate [Insurance Co.] v. Beavers,
 
 611 So.2d 348 (Ala.1992)[,] states that it is the insured’s notice to the carrier of his intention to seek un-derinsured motorist insurance benefits at the time the insured informs the un-derinsured motorist insurance carrier of the tortfeasor’s intent to settle that requires the carrier to investigate the claim in order to determine whether to protect its subrogation rights. At the time Sagamore was informed of a settlement with the tortfeasor, she had been released. Sagamore had been denied its opportunity to investigate and determine whether or not to consent to this settlement or front the money and preserve its subrogation rights. Based upon the holding in
 
 Beavers,
 
 the Plaintiff would not have a claim against Sagamore for
 
 *1289
 
 underinsured motorist benefits. Furthermore, the Sagamore policy of insurance requires (on page 10) an ‘insured person under this coverage must do nothing before or after a loss to prejudice our rights of recovering from any uninsured or underinsured motorist coverage.’ Clearly by executing a Release with the tortfeasor, the Plaintiff jeopardized Sagamore’s ability to proceed against the tortfeasor.
 

 “The policy goes on to add additional duties and states in pertinent part ‘a person seeking uninsured motorist (would also include underinsured motorist) must also promptly notify us in writing of a tentative settlement between the insured person and the insurer of the uninsured motor vehicle and allow us thirty (30) days to advance payment to that insured person in an amount equal to the tentative settlement to preserve our rights against the insurer, or operator of such uninsured motor vehicle.’ Again, at the time Sagamore was notified of the settlement in writing, the settlement had been completed.
 

 “Based upon the foregoing, it is Saga-more’s position at this time, that there is not underinsured motorist coverage due as a result of the accident made the basis for this lawsuit. Of course, should you have information that is contrary to what has been outlined in this letter, I will be more than glad to review the same and pass it along to Sagamore.”
 

 On October 17, 2008, Sagamore filed a response to Sudduth’s motion to enforce, averring that its September 15, 2008, letter was not an unqualified offer of settlement and that counsel for Sudduth was guilty of a “gross misinterpretation” of the September 15, 2008, letter. After a hearing, however, the trial court entered an order on January 12, 2009, granting the motion to enforce and awarding Sudduth $25,000, plus court costs. Sagamore filed a motion on January 23, 2009, requesting that that order be vacated,
 
 [2]
 
 and the trial court set that motion for a hearing; however, on April 3, 2009, the trial court entered an order denying Sagamore’s motion. Sagamore timely appealed.
 

 The judgment under review comes to this court based solely upon the letters exchanged between the parties’ attorneys; thus, as in
 
 Mays v. Julian LeCraw & Co.,
 
 807 So.2d 551 (Ala.Civ.App.2001), we apply no presumption of correctness to the trial court’s decision.
 
 Mays
 
 further notes the following additional applicable principles of law:
 

 “Section 34-3-21, Ala.Code 1975, governs the validity and enforcement of settlement agreements reached between parties at the trial-court level. Section 34-3-21, Ala.Code 1975, provides: ‘An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.’ A settlement agreement entered into between the parties is binding and will be summarily enforced. ‘It is axiomatic, however, that the parties must first enter into a valid and binding settlement agreement before it will be enforced.’ ”
 

 
 *1290
 
 807 So.2d at 554 (citations omitted). Further, “settlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement.”
 
 Grayson v. Hanson,
 
 843 So.2d 146, 150 (Ala.2002).
 

 In this case, Sagamore’s proposal to tender $25,000 to Sudduth was couched in terms of Sagamore’s own clear desire to conform to the subrogation “road map” set forth in
 
 Lambert v. State Farm Mutual Automobile Insurance Co.,
 
 576 So.2d 160 (Ala.1991), step (6) of which provides that, “[i]f the underinsured motorist insurance carrier wants to protect its subrogation rights [against a tortfeasor], it must ...
 
 advance to its insured
 
 an amount equal to the tort-feasor’s settlement offer.” 576 So.2d at 167 (emphasis added). The September 15, 2008, letter expressly refers to Sagamore’s intention to
 
 advance
 
 to Sud-duth proceeds of a settlement into which Sudduth had apparently already entered (presumably with the operator of the motor vehicle that collided with Sudduth’s automobile) in an effort to preserve its subrogation rights in the manner suggested by
 
 Lambett.
 
 It appears from the parties’ correspondence that Sagamore’s “limited information” concerning the nature of that settlement, especially the precise amount of that settlement, prompted it to propose on September 15, 2008, tendering to Sudduth an amount that Sagamore believed was equal to the limits of the operator’s liability coverage
 
 (ie.,
 
 $25,000). Thus, the intent of Sagamore’s proposed advance of $25,000 was
 
 not
 
 to settle any and all claims Sudduth might have asserted against Sagamore, but to substitute its payment for any payments Sudduth might receive as a consequence of her settlement and to preserve its subrogation rights against the party who might ultimately be found responsible for the collision. In contrast, the September 23, 2008, letter from Sudduth’s counsel adopted a construction of Sagamore’s September 15, 2008, letter as requesting a release of Sudduth’s claim against Sagamore in exchange for the $25,000 payment — a construction that completely ignored the invocation of
 
 Lambert
 
 as being the impetus for the proposed payment. As simply stated in
 
 Ex parte Wright,
 
 443 So.2d 40, 42 (Ala.1983): “An acceptance is required to be identical with the offer; otherwise, there is no meeting of the minds and no agreement”; here, Sudduth’s “acceptance” was, if anything, more in the nature of a counteroffer that Sagamore completely rejected in its September 25, 2008, reply.
 

 Based upon the foregoing facts and authorities, we conclude that the trial court erred in concluding that a valid written settlement agreement was entered into by Sagamore and Sudduth acting through their attorneys. We therefore reverse the January 12, 2009, order incorporated into its final judgment in the case and remand the cause for further proceedings.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although that company was identified as "AIG Casualty Company" in the complaint, the answer and subsequent filings indicate that the actual AIG affiliate was National Union Fire Insurance Company of Louisiana.
 

 [2]
 

 . Although that motion erroneously invoked Rule 59(e), Ala. R. Civ. P., because the trial court's order of January 12, 2009, was not a final judgment, see
 
 Malone v. Gainey,
 
 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999), the trial court nonetheless retained power, under Rule 54(b), Ala. R. Civ. P., to revisit its January 12, 2009, nonfinal order until a final judgment was entered on February 13, 2009, on the last pending claim against the AIG affiliate, after which Sagamore's motion “quickened'' into a true postjudgment motion,
 
 see Richardson v. Integrity Bible Church, Inc.,
 
 897 So.2d 345, 347 (Ala.Civ.App.2004).