# Southern Railway Company *v.* Huntsville Lumber Co.

## *Injunction.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 695.)

1. *Railroads; Agreement of Agents; Ratification.*—Where a freight agent contracted that defendant railroad company would build a spur track for a lumber company, and the track was built, such action was a binding ratification by the railroad of the contract of its agent on its behalf.

2. *Contracts; Definition.*—A contract is a thing or an agreement upon which the minds of two or more people unite or agree.

3. *Same; Agreement to be Reduced to Writing.*—Where the parties contracted by parol with the understanding that a formal agreement was to be later prepared, and when prepared, such instrument contained stipulations not contemplated by the memorandum the parties had signed, one party could not claim that the other's refusal to sign such instrument abrogated the contract.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Huntsville Lumber Company to enjoin the Southern Railway Company from taking up and removing certain tracks. Decree for complainant, and respondent appeals. Affirmed.

WERT & LYNNE, for appellant.

E. W. GODBEY, for appellee.

DE GRAFFENRIED, J.—I. L. Graves, general freight agent, acting for and on behalf of the Southern Railway Company, made a contract with the Huntsville Lumber Company to build, at the expense of the Huntsville Lumber Company, a side track. This side track was to be constructed for the purpose of enabling

the Southern Railway Company to haul logs to and lumber from a sawmill which is owned and operated by the Huntsville Lumber Company. We quote the agreement which was made by the said I. L. Graves, general freight agent, acting for the Southern Railway Company, and the lumber company:

"January 14, 1908.

"Mr. W. F. Webster, Vice Pres. Huntsville Lbr. Co., Decatur, Alabama—Dear Sir: Industrial: Side Track Huntsville Lumber Co., at Decatur, Ala. Since receipt of your letter of December 21st, I have handled with our operating department the matter of the construction of your side track; and for mutual benefit and protection, it is felt that it will be well to exchange letters, giving *positive assurances of* what will be done. To this end I beg to advise our understanding of the matter:

"First: The Southern Railway Company *will construct* track at Decatur Junction, 500 feet from point of switch, with total clearance of 350 feet.

"Second: The Huntsville Lumber Company *will immediately,* upon completion of this track and rendition of the bill, reimburse the Southern Railway Company for the entire expense thereof: this expense at present being estimated at $799.95.

"Third: The Southern Railway Company *will refund to the* Huntsville Lumber Company the value of the rails, fastenings, switches, and other hardware used in the construction of the track, at present estimated to cost $459.18, on basis of 5 per cent. of the revenue accruing to the Southern Railway Company for lumber manufactured at the plant of the Huntsville Lumber Company at Decatur, Alabama, from logs shipped from the track in question.

"Fourth: Owing to the difficulty of positively identifying lumber actually manufactured from these logs,

the Southern Railway is agreeable to this refund being made on basis of making a refund of one car of lumber for three cars of logs shipped into the plant; that is to say, when three cars have actually been shipped into the plant, the Huntsville Lumber Company will be entitled to refund on one car of lumber, when six cars have been shipped, to refund on two cars of lumber, when nine cars have been shipped, to refund on three cars of lumber, and in the same manner until the entire value of the rails and fastenings is refunded, provided this refund is entirely accomplished within two years commencing eighteen months after the completion of track.

"As explanation of the above basis for refund: It has been determined that the revenue on the logs into the plant is too low to justify the making of any refund therefrom, and the alternative is to make a refund on the lumber manufactured from these logs.

"I am sending *you this letter in duplicate. If it meets with your approval, will you please sign below on the space indicated and return to me at once; when instructions will be given to put the track in.*"

"Yours truly,　　　　　　　　I. L. Graves,

　　　　　　　　　　"General Freight Agent.

"Approved: F. W. Webster, Vice Pres. of

　　　　　　　　　　　　"Huntsville Lumber Co.

It appears from this record that the above was intended by the parties, when it was signed, as a memorandum of the agreement, and that it was contemplated that subsequently a formal instrument was to be prepared setting out the agreement, and that this formal agreement was to be signed by both parties. The formal agreement which the parties had in contemplation has never in fact been signed and delivered by them,

*but the side track has been built,* and the Huntsville Lumber Company stands ready to pay for the same.

(1) The Southern Railway Company prepared an agreement for the Huntsville Lumber Company to sign, which contained stipulations not appearing in the above memorandum, and the Huntsville Lumber Company refused to sign it on *that account.* Thereupon the Southern Railway Company proposed to remove the side track, and this bill was filed by the Huntsville Lumber Company to enjoin the Southern Railway Company from removing the side track. The chancellor rendered a decree granting to the Huntsville Lumber Company the relief prayed for in its bill of complaint, and this appeal is prosecuted for the purpose of reversing that decree.

(1) (2) The appellant claims that this decree should be reversed because the evidence fails to show that Graves had any authority to bind the railroad company to build this side track or to execute a contract with reference to the building of a side track. On this subject the appellant says in its brief: "There are three things that it was necessary for the appellee to have established, viz.: First, that the appellant had clothed Graves with the power to execute this contract; or, second, clothed him with the power to do acts including the execution of this contract; or, third, permit him, by acquiescence or otherwise, to possess, as to the public, the appearance of such power. On the contrary, the evidence showed, without conflict, that he was not clothed with power to execute this contract; that the letter itself showed that this power was vested in another and distinct department of the Southern Railway Company, and that the appellee understood the lack of power on the part of Graves."

As sustaining the quotation from the brief, the appellant cites us to the following authorities: 2 Thomp. on Cor., §§ 1607-1609; *City of Owensboro v. Weir,* 95 Ky. 158, 24 S. W. 115; *Des Moines Mfg. Supply Co. v. Tilford Mill Co.,* 9 S. D. 542, 70 N. W. 839; *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234, 95 Am. St. Rep. 964; *Conqueror Gold Min. Mill Co. v. Ashton,* 39 Colo. 133, 90 Pac. 1124.

The trouble with the above argument is that the Southern Railway Company *built the side track.* Certainly that department of the railway company · which built the *side track* was *the* department which was authorized to build side tracks, and the *only* evidence of an agreement to which the building of the side track can possibly be referred is the paper which was signed by Graves, and which we have above quoted in this opinion. The building of the side track was not blindly done, and its building must be taken as a ratification by the railway company of the agreement which was made by Graves, if it be true that the agreement needed ratification. "The ratification of an act is equivalent to an original authorization of the act."—*Holloway v. Harper,* 108 Ala. 647, 18 South. 663.

(2, 3) (3) A contract is the thing upon which two or more people agree. Contracts are frequently reduced to writing, and when this is done, the writings are generally referred to as contracts. The writings are, however, *not* contracts, but *written evidences* of the contracts. We think that it is clear that when the above quoted memorandum was made, it was understood between the parties that at a later date a formal writing was to be drawn up and signed by the parties, to be kept by them as a written memorial of what had *then* been agreed upon by them. The memorandum showed what this future writing was to contain. Neither party

had a right to expect the other party to sign a writing in any way varying the terms of the contract. A writing *was* prepared, but it contained stipulations not contemplated in the above memorandum and, of course, the railroad company has no right to complain of the fact that the Huntsville Lumber Company refused to sign it. We think that the following, which is taken from *Emerson & Company v. Stevens Gro. Co.*, 95 Ark. 421, 130 S. W. 543, is expressive of the law: "If the contract is actually entered into and made, whether by messages, correspondence, or by word of mouth, the agreement becomes at once effective, although it was expected that the terms should afterwards be embodied in a written instrument and signed."

On this subject also see *Woldert v. Arledge,* 4 Tex. Civ. App. 692, 23 S. W. 1053; *Rankin v. Mitchem.* 141 N. C. 277, 53 S. E. 855; *Concannon v. Point Min. & Mill Co.,* 156 Mo. App. 79, 135 S. W. 991; *Sanders v. Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 434, 43 Am. St. Rep. 760.

(4) This case is, under the principles above announced, one of *fact,* and, in our opinion, the decree of the court below is supported by the facts. We are therefore of the opinion that the decree of the court below should be affirmed.

Affirmed.

ANDERSON, C. J. and MCCLELLAN and MAYFIELD, JJ., concur.