rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

————————————————

### SC-2024-0591

————————————————

**iWTNS, Inc.; Leveraged, LLC; and Bradley Lewis**

**v.**

**MotionMobs, LLC**

**Appeal from Jefferson Circuit Court**
**(CV-22-902767)**

McCOOL, Justice.[1]

———————————

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice McCool on January 21, 2025.

On behalf of two companies, Bradley Lewis contracted with MotionMobs, LLC, to create a mobile-phone application. After the parties disagreed over payment obligations and the quality of MotionMobs' work product, however, MotionMobs sued Lewis and the companies in the Jefferson Circuit Court, alleging breach of contract. During the subsequent litigation, Lewis exchanged text messages with the CEO of MotionMobs to discuss a possible settlement. Contending that this text-message exchange amounted to a binding settlement agreement, MotionMobs filed a motion to enforce the purported agreement in the circuit court. The court granted that motion, holding that the parties had agreed to settle in the text-message exchange and ordering them to carry out their obligations under that agreement. Lewis and the companies appeal, arguing that the text-message exchange did not amount to a binding settlement agreement. We agree that the text-message exchange was not a settlement agreement. We therefore reverse the circuit court's judgment and remand the case for further proceeding

I.  Facts and Procedural History

Lewis is the founder and president of iWTNS, Inc., and the owner of Leveraged, LLC. In November 2021, Lewis, on behalf of both companies, executed a contract ("the application contract") with MotionMobs to build a mobile-phone application. That application would let users contact legal counsel when pulled over by police. Under the application contract, MotionMobs agreed to provide the application in March 2022 (later extended to April) and to bill $200 an hour for its services.

The relationship between the parties soon soured, and in September 2022 MotionMobs sued Lewis, iWTNS, and Leveraged ("the defendants"), alleging breach of contract. In its complaint, MotionMobs contended that it had performed its obligations under the application contract and that the defendants had breached the application contract by failing to pay in full. In response, the defendants countered that MotionMobs had delayed production of the application, had ultimately delivered an unfinished product, and had overcharged for its services.

At the heart of this appeal is whether the parties agreed to settle this litigation in a text-message exchange. On June 29, 2023, Lewis

texted with MotionMobs' CEO, Jennifer Fisher, discussing a possible settlement. The text-message exchange was as follows:

> <u>Bradley Lewis</u>: "I'm able to commit to paying Motion Mobs 30k per month for 5 months. If you all are ok with this please let me know asap. I can have the agreement drafted up and have the first payment to you within the next 7 days. My objective is to pay you all off ahead of the 5 months but working with what I have now this is the best I can do. Please advise on how to move forward."

> <u>Jennifer Fisher</u>: "Bradley -- MotionMobs will agree to settle this matter in exchange for $150,000 to be paid in five equal monthly installments over the course of five months in exchange for a mutually agreeable release. The first payment of $30,000 will be due 7 days from the date the parties agree. The agreement will need to contain agreeable acceleration and default judgment clauses."

> <u>Bradley Lewis</u>: "I will get this drafted for us so it will be done next week."

Contending that the text-message exchange amounted to a binding settlement agreement, MotionMobs filed a motion to enforce that purported agreement on July 10, 2023. MotionMobs attached the text-message exchange and later submitted an affidavit by Fisher.

While the circuit court considered the motion to enforce, the parties executed a different, written settlement agreement to avoid further litigation ("the August agreement"). The August agreement was styled

4

as a release, and it contained, among other things, the parties' respective obligations, an acceleration clause in case of breach, and conditions that had to be met for the entirety of the August agreement to be valid.

In particular, the August agreement provided that, in exchange for payment by defendants, MotionMobs would deliver the application, along with the source code and other intellectual property. Then, the defendants would have five days to verify that the application met contractual requirements. If, after five days, the defendants failed to respond or rejected the delivery, the August agreement's remaining provisions would be void. And, in that scenario, the August agreement provided that MotionMobs would have the right to pursue enforcement of the text-message exchange as a binding settlement agreement and that the defendants would have the right to argue that the text-message exchange created no such agreement.

The defendants ultimately did not accept delivery. The August agreement's remaining provisions were therefore void. Consequently, the parties then turned their attention back to whether the text-message exchange amounted to a settlement agreement.

5

Following a hearing in October 2023 on MotionMobs' motion to enforce the purported settlement agreement, the circuit court entered the following order:

> "The Court FINDS that, on June 29, 2023, [the defendants] offered in writing to pay the sum of $150,000.00 in five monthly installments of $30,000.00 each to settle this case with no terms requiring verification of the coding produced to date by [MotionMobs]. The Court FINDS that, the same day, Jennifer Fisher, CEO of [MotionMobs,] accepted the offer in writing. Accordingly, the Court FINDS that the Parties entered into a valid, binding agreement to settle the case under the terms stated above."

(Capitalization in the original.)

The circuit court then ordered the parties to execute a written agreement according to the above terms. It further ordered that the first payment would be due 14 days from October 3, 2023.

The defendants filed a motion requesting that the circuit court amend, alter, or vacate the order, or otherwise relieve them from having to comply with the order. For its part, MotionMobs moved to hold the defendants in contempt, alleging that the defendants were refusing to comply with the order. The circuit court denied both motions.

The defendants appealed to this Court on February 21, 2024. On June 14, 2024, we dismissed that appeal on the basis that it arose from a nonfinal order. iWTNS, Inc. v. MotionMobs, LLC (SC-2024-0113). Subsequently, MotionMobs moved for the entry of a final judgment, the circuit court entered a final judgment on August 14, 2024, and the defendants timely appealed to this Court.

## II. Standard of Review

This appeal presents only questions of law, which we review de novo. Billy Barnes Enters., Inc. v. Williams, 982 So. 2d 494, 498 (Ala. 2007).

## III. Discussion

The defendants argue that the text-message exchange does not amount to a settlement agreement. They contend (1) that Fisher's response is a counteroffer, not an acceptance, (2) that Fisher's counteroffer is indefinite and thus could not be accepted, and (3) that, even if the exchange could be a valid agreement, it lacked signatures and is thus invalid on that ground. We agree that the text-message exchange does not constitute a settlement agreement because, after rejecting

Lewis's initial offer, Fisher made a counteroffer with indefinite terms that the defendants did not accept. We therefore do not consider the defendants' third argument.

Under the law, a settlement agreement is simply a contract. Sheridan v. Board of Water & Sewer Comm'rs of Prichard, 764 So. 2d 526, 529 (Ala. 1999). To be valid, a contract requires an offer, acceptance of the offer, and adequate consideration. Cook's Pest Control, Inc. v. Rebar, 852 So. 2d 730, 737 (Ala. 2002). For contracts for services, an acceptance must be "identical" to the offer to be effective. Smith v. Chickamauga Cedar Co., 263 Ala. 245, 249, 82 So. 2d 200, 203 (1955) (citation omitted). Thus, if a party responds to the offer with additional or changed terms, that is a counteroffer that implicitly rejects -- and thus terminates -- the original offer. Cook's Pest Control, 852 So. 2d at 737; Payne v. Zimmern, 207 Ala. 155, 158, 92 So. 433, 435 (1921) ("There is abundant authority for the proposition that a conditional acceptance which amounts to a counter offer operates as a rejection of the original offer.").

8

A valid contract also requires that the parties agree to material terms. Grayson v. Hanson, 843 So. 2d 146, 150 (Ala. 2002). But a contract does not exist when the parties "merely agreed to later agree." Id. Agreements to agree on some future date are unenforceable because material terms are either too indefinite or simply missing, which demonstrates that there had not been a meeting of the minds. Id.; 17A Am. Jur. 2d Contracts § 183 (2004); White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1051 (Ala. 2008) (providing examples of material terms that are often scrutinized for definiteness, such as "'the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations'" (citation omitted)).

Furthermore, a party cannot agree to an indefinite offer, even if he or she wants to do so. White Sands Grp., 998 So. 2d at 1051. A contract with definite terms allows courts to determine whether there has been a breach and the appropriate remedy in case of a breach. Id.

Here, the text-message exchange does not amount to a valid settlement agreement because Fisher's reply is a counteroffer that the defendants never accepted. Lewis started the negotiations with an offer

to pay MotionMobs $30,000 a month for five months. In response, Fisher agreed to that payment schedule but added material terms as conditions on her acceptance -- a counteroffer. See, e.g., Hall v. Integon Life Ins. Co., 454 So. 2d 1338, 1342 (Ala. 1984) ("To be effective as an acceptance, any expression of assent restating the offer must not change the material terms of the offer.").

Specifically, Fisher asked that the agreement include "a mutually agreeable release" with "agreeable acceleration and default judgment clauses." Those are new terms that are not included in Lewis's offer. Her response was therefore a counteroffer; that she wrote in the future tense, speaking of what the agreement "will" require, and stated that payment would be due seven days "from the date the parties agree" bolsters that conclusion. Her words indicate that she did not consider her response as an outright acceptance of Lewis's offer but, rather, understood her response to be a counteroffer containing additional terms requiring further negotiation.

And the defendants never accepted Fisher's counteroffer. As an initial matter, Lewis's response that "I will get this drafted for us so it

will be done next week" does not indicate an acceptance. In context, it is better understood that he was going to attempt to cement what could be a "mutually agreeable" release with acceleration and default-judgment clauses. Without knowing more information, Lewis could not promise to write entire clauses that, in the abstract, would be "agreeable" to Fisher.

It is therefore clear that Lewis was not merely saying he would formalize in writing an already-made agreement but, rather, that he would craft a proposed agreement based on Fisher's counteroffer. Cf. Southern Ry. Co. v. Huntsville Lumber Co., 191 Ala. 333, 338, 67 So. 695, 696 (1914) ("'If the contract is actually entered into and made, whether by messages, correspondence, or by word of mouth, the agreement becomes at once effective, although it was expected that the terms should afterwards be embodied in a written instrument and signed.'" (citation omitted)); Restatement (Second) of Contracts § 27 (Am. L. Inst. 1981) (noting that agreements can be binding when the parties have agreed to all material terms despite intending to later formalize it in writing).

Thus, even if Lewis wanted to accept this "counteroffer," he could not: Fisher's counteroffer was too indefinite as to those new terms. White

Sands Grp., 998 So. 2d at 1051. At most, he could have only "agreed to later agree" at some future date, which is not an enforceable contract. Grayson, 843 So. 2d at 150.

Indeed, the parties' later August agreement demonstrates that there was a lot more to negotiate before the parties could agree on these new terms. The August agreement is 4 1/2 pages long. Two paragraphs define precisely what claims are to be released and during what time frame. Another two provisions outline an acceleration clause, providing the conditions under which it would take effect. And the remaining pages lay out step-by-step what the parties had to do in exchange for their mutual releases.

The brief text-message exchange contains no similar level of specificity. As our precedents demonstrate, parties cannot agree to empty clauses with details to be filled in later. See White Sands Grp., 998 So. 2d at 1051. And courts cannot fill in those details and make a contract for the parties where there is none. Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth., 508 So. 2d 225, 228 (Ala. 1987). Because Lewis did not (and could not) accept Fisher's indefinite counteroffer,

MotionMobs and the defendants have not yet agreed to settle. And if they desire to settle this litigation, MotionMobs and the defendants need to go back to the drawing board.

### IV. Conclusion

Because Lewis and Fisher never agreed to a settlement in their text-message exchange, the circuit court erred in granting MotionMobs' motion to enforce the text-message exchange as a binding settlement agreement. We therefore reverse the judgment and remand the case for further proceedings.

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Bryan, and Mendheim, JJ., concur.